UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------x
109 MERRICK DELI CORP.

                Plaintiff,

      -against-

UNITED STATES OF AMERICA and
THOMAS VILSACK, SECRETARY,
U.S. DEPT. OF AGRICULTURE,

                Defendants.
----------------------------------------------------------x

**MEMORANDUM AND ORDER**

11-cv-977 (SLT) (RER)

**TOWNES, United States District Judge,**

      Plaintiff 109 Merrick Deli Corp. ("Merrick Deli") commenced the instant action against the United States of America and Thomas Vilsack, sued in his capacity as secretary of the USDA (collectively "Defendants"), pursuant to the Food and Nutrition Act of 2008 ("FNA"), seeking review of an administrative decision of the United States Department of Agriculture ("USDA"), which determined that Merrick Deli violated the statute and regulations governing the Supplemental Nutrition Assistance Program ("SNAP"), 7 U.S.C. § 2011, *et seq.*, formerly known as the Food Stamp Program, and imposed a trafficking civil money penalty in the amount of $54,000 on Merrick Deli in lieu of disqualifying Merrick Deli from participating in SNAP. Currently before the Court is Defendants' motion for summary judgment, which, for the following reasons, is granted in its entirety.

**Legal Standard**

      Summary judgment is appropriate only where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The role of the court is not "to weigh the evidence and determine

the truth of the matter but to determine whether there is a genuine issue for trial." *Cioffi v. Averill Park Cent. Sch. Dist. Bd. of Educ.*, 444 F.3d 158, 162 (2d Cir. 2006) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). A genuine issue of fact exists when there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252. In determining whether there is a genuine issue of material fact, a court resolves all ambiguities and draws all justifiable inferences in favor of the non-moving party. *Id.* at 255.

With that standard in mind, the pertinent facts, undisputed, or where disputed considered in Plaintiff's favor, are as follows:

## Background

### *Regulatory Landscape*

The Food and Nutrition Services ("FNS") division of the USDA administers SNAP. 7 U.S.C. § 2011, *et seq.*; 7 C.F.R. § 271.3. Under the program, eligible individuals receive benefits to increase their food purchasing power. *183 Bronx Deli Grocery Corp. v. United States*, 11 CIV. 1527 PGG, 2012 WL 2359664, at *1 (S.D.N.Y. June 18, 2012). These benefits are distributed through Electronic Benefits Transfer ("EBT") cards, and are used to purchase eligible food items at participating retail food stores. *Id.* The Government then pays those food stores the full face value of the purchased items. 7 U.S.C. § 2013.

Pursuant to SNAP regulations promulgated by the USDA, retail food stores may not charge EBT cards for ineligible items, such as non-food items and some prepared hot food items, nor may they exchange SNAP benefits for cash. 7 C.F.R. 271.2. Exchanging SNAP benefits for ineligible items is called "trafficking." *Id.* If FNS finds that a retailer has trafficked SNAP benefits, FNS may disqualify that retailer from participating in the program. 7 C.F.R. 278.6(a). Alternatively, FNS may impose a civil money penalty in lieu of disqualification if it "determines that a disqualification would cause hardship" to households receiving SNAP benefits, *id.*, or if

2

"if the firm timely submits to FNS substantial evidence which demonstrates that the firm had established and implemented an effective compliance policy and program to prevent violations of the Program," 7 C.F.R. 278.6(i).

The statute also provides that a final agency decision issued by the USDA is subject to judicial review. 7 U.S.C. § 2023(a)(13). The suit "shall be a trial *de novo* by the court in which the court shall determine the validity of the questioned administrative action in issue[.]" 7 U.S.C. § 2023(a)(15).

*Factual Background*

Merrick Deli, a "small grocery store" located in Queens, New York, owned and operated by Basheer Ahmed Al-Zandani, was approved by the USDA to participate in SNAP on May 13, 2009. (Pl.'s 56.1 Stmt. ¶¶ 8-9.) Within a few months, the FNS began investigating Merrick Deli for a suspicious pattern of transactions. (Administrative Record ("AR") 9.) FNS investigators found that:

The store was approximately 40 feet by 19 feet, and included a deli section and storage area. (Pl.'s 56.1 Stmt. ¶ 15.) There were no shopping carts or shopping baskets. (AR 6.) There were two registers, both of which were behind a plexiglass enclosure with a window for cashiers. (AR 15, 29.) There were no optical scanners and no conveyor belt for expediting transactions. (AR 44-45.) One of the registers was reserved exclusively for lottery ticket purchases. (AR 29, 46.) During a visit to the store, an FNS investigator observed that the store's inventory was "dusty" and contained "expired foods" and "dented canned items with faded labels," and the most expensive item in stock was a 10lb container of rice, on sale for $13.99. (AR 30, 43-44, 52.)

The FNS investigation into the area revealed that Merrick Deli's immediate competition included two supermarkets within two blocks, which each had a large variety of items, shopping

3

carts, and four cash registers. (AR 44.) There were also eighteen small grocery stores, three medium-sized grocery stores, one large grocery store, and three supermarkets in the neighborhood that also participated in SNAP. (AR 53-54.)

An FNS investigator compared Merrick Deli's transactions to other comparable grocery stores in the area, and found that the store conducted nearly four times as many transactions as nearby stores during the same time period (4,535, as compared to 1,205 and 486 at two comparable grocers during the same time period). (AR 34, 56.) Additionally, the investigator found that Merrick Deli's total transaction amount was disproportionately high ($110,722, as compared to $15,777 and $3,073 for the same period for two nearby small grocery stores). (AR 35, 56.)

An FNS investigator also reviewed electronic transaction records and found five trends that the Defendants suggest are indicative of trafficking:

(1) a disproportionate number of transactions ending in .00, .19, or .50 cents, although the store did not have a practice of rounding transactions to the nearest .00, .19, or .50 cents (AR 44-45, 60-64);

(2) a pattern of performing large-dollar-value transactions within minutes of each other, although the store had only one register for general merchandise transactions, there were not many expensive items for sale, there was not enough room on the counter for a large number of items, and the store was not equipped with an optical scanner or conveyor belt to expedite transactions (AR 46-47, 65-71);

(3) a pattern of repetitive large-dollar-value transactions on the same household accounts during single twenty-four hour periods (AR 48-49, 72-85);

(4) a pattern of all or a majority of some families' benefits being depleted in a short time frame (AR 50-51, 86-92); and

(5) a pattern of unusually large-dollar-value transactions, compared to the store's stock (AR 52, 93-106).

Based on these observations, the FNS concluded that Merrick Deli had engaged in trafficking.

*Procedural History*

By letter dated February 10, 2010, FNS notified Merrick Deli of the results of FNS's investigation and informed the store that it could be permanently disqualified from participating in SNAP. (Pl.'s 56.1 Stmt. ¶¶ 45-46; AR 58-107.) On February 20, 2010, Merrick Deli submitted evidence that it had implimented a regulation compliance policy to prevent trafficking and sales of ineligible items, and requested a trafficking civil money penalty in lieu of disqualification. (Pl.'s 56.1 Stmt. ¶ 48.) By letter dated April 14, 2010, FNS notified Merrick Deli that it had determined that the alleged violations had occurred and that the store was qualified for a civil money penalty in lieu of disqualification because it had previously instituted an acceptable compliance program. (*Id.* at ¶¶ 50-51.)

Merrick Deli sought further review of that determination before the Administrative Review Branch. (*Id.* at ¶¶ 52-54). Ultimately, in a "Final Agency Decision" dated February 1, 2011, the USDA concluded that Merrick Deli did not have the inventory, counter space, registers, or conveniences (such as shopping carts or baskets), necessary to support 31 large-dollar-value transactions (over $200) from the investigation period, particularly in light of the fact that there were multiple large-dollar-value transactions within minutes of each other and certain households made multiple large-dollar-value transactions within single twenty-four hour periods. The USDA concluded that Merrick Deli had violated applicable SNAP regulations and affirmed the $54,000 penalty, which was reached by following the regulatory formula for calculating penalties. (*Id.* at ¶¶ 55-56.)

On March 1, 2011, Plaintiff filed the present action seeking review of the agency's final determination. (Compl. at ¶ 1.) In its complaint, Merrick Deli argues (1) that FNS's trafficking finding was unsupported by the evidence; (2) that the $54,000 civil money penalty was arbitrary

5

and capricious; and (3) that FNS violated Merrick Deli's substantive and procedural due process rights. (Compl. at ¶¶ 23-38.) Currently before the Court is Defendants' motion for summary judgment. For the following reasons, Defendants' motion is granted in its entirety.

## Discussion

### A. The Trafficking Finding was Supported

A food retailer aggrieved by a final administrative action of the FNS may obtain judicial review of the agency's decision. 7 U.S.C. § 2023(a)(13). If the retailer "disputes FNS's finding that it violated program regulations, a district court generally reviews the matter *de novo* in order to 'determine the validity of the questioned administrative action.'" *Makey Deli Grocery Inc. v. United States*, 873 F. Supp. 2d 516, 520 (S.D.N.Y. 2012) (quoting *Yafaie v. United States*, No. 94 Civ. 7825(KMW), 1995 WL 422169, at *1 (S.D.N.Y. July 18, 1995) (citing 7 U.S.C. § 2023(a)(15)).

Here, Merrick Deli disputes that the evidence supports an inference of trafficking. Merrick Deli asserts that "EBT transaction data ... alone would not satisfy all the elements as set forth in 7 CFR § 287.6(d) [*sic*]."[1] (Pl.'s Br. at 11.) The FNS observed several purportedly suspicious patterns in the EBT electronic transaction data: a disproportionately high number of transactions ending in .00, .19, or .50 cents; a pattern of large-dollar-value transactions within minutes of each other; a pattern of repetitive large-dollar-value transactions on the same household accounts during single twenty-four hour periods; a pattern of all or a majority of some families' benefits being depleted in a short time frame; and a pattern of unusually large-dollar-value transactions, compared to the store's stock.

---

[1] The relevant regulation, 7 C.F.R. § 278.6(d), provides that "The FNS regional office making a disqualification or penalty determination shall consider: (1) the nature and scope of the violations committed by personnel of the firm, (2) any prior action taken by FNS to warn the firm about the possibility that violations are occurring, and (3) any other evidence that shows the firm's intent to violate the regulations."

Merrick Deli offers no legal basis for its assertion that electronic EBT transaction data, alone, cannot sustain a trafficking violation. Indeed, although Merrick Deli's owner, Al-Zandani, attempts, in his affidavit, to explain away some of the suspicious EBT transactions, the electronic evidence, alone, is quite compelling. Al-Zandani proposes several alternative combinations of items that might support transactions ending in .00, and explains some of the unusual large-dollar-value purchases, however the trafficking finding is based on inferences drawn from the suspicious combination of usual electronic data which Al-Zandani cannot explain away. These are not single isolated incidents but rather numerous incidents forming a pattern of suspicious transactions. Although there may indeed be a conceivable bundle of goods on sale at Merrick Deli that could support some of these suspicious transactions, the inference of trafficking is overwhelmingly supported by the fact there are a disproportionately high number of purchases having the same total value, *and* a high number of large-dollar-value purchases within minutes of each other, *and* an otherwise inexplicable pattern of households making multiple similar-dollar-value, large-dollar-value purchases within hours of each other *and* depleting their entire monthly allowance within single 24 hour periods.

In any event, the administrative record contains far more than mere EBT transaction data. An FNS investigator found that Merrick Deli's inventory could not support the high number of high-dollar value purchases and that the store did not have the conveniences (*e.g.*, shopping carts or baskets, a conveyor belt, multiple registers) necessary to support multiple high-dollar value purchases within minutes of each other. More telling, the investigation found that items on the store's shelves were covered in dust and had passed their expiration date, suggesting that those food items were not moving off the shelves rapidly enough to support the high number of SNAP claims submitted by Merrick Deli. Additionally, comparing all of the SNAP transaction data in

7

the immediate area revealed that Merrick Deli conducted a disproportionately high number of SNAP transactions, compared to other similarly-situated stores in the area – although, as a "small grocery store," its selection of food items was limited, and although a visit to the store revealed that the dusty food items were not moving off the shelves particularly rapidly. Merrick Deli's conclusory assertions and speculative alternative explanations for the evidence in the record does not create a genuine issue as to any material fact.

### B. *The Civil Penalty Imposed Was Not Arbitrary or Capricious*

"The standard of review for the imposition of a [SNAP] sanction is a determination whether the [FNS]'s action was arbitrary or capricious, *i.e.*, whether it was unwarranted in law or without justification in fact." *El Tepeyac Grocery, Inc. v. United States*, 515 F. App'x 55, 56 (2d Cir. 2013) (quoting *Willy's Grocery v. United States*, 656 F.2d 24, 26 (2d Cir. 1981) (internal quotation marks omitted). "The 'focal point for judicial review' is 'the administrative record already in existence.'" *Makey Deli*, 873 F. Supp. 2d at 520 (quotations omitted). It is well-settled that "'[i]f the agency has followed its guidelines ... the reviewing court may not overturn the decision as arbitrary and capricious.'" *Guzman v. U.S. Dep't of Agric. Food & Nutrition Serv.*, 931 F. Supp. 2d 488, 494 (S.D.N.Y. 2013) (quoting *Nagi v. U.S. Dep't of Agr.*, 96 CIV. 6034 (DC), 1997 WL 252034, at *2 (S.D.N.Y. May 14, 1997)). Thus, "[i]f the penalty imposed is in accordance with the settled policy of the FNS, it is not arbitrary or capricious." *Yafaie*, 1995 WL 422169, at *1.

Merrick Deli argues that the penalty that the FNS imposed on it should be reviewed under the law governing criminal penalties. However, the applicable standard of review governing cases involving trafficking civil money penalties imposed by the FNS for violations of the SNAP statute and regulations, which is set forth above, is well settled. *See Willy's Grocery*,

656 F.2d at 26; *Guzman*, 931 F. Supp. 2d at 494. Merrick Deli's attempt to recast the trafficking civil money penalty as a criminal penalty is without merit. Contrary to Merrick Deli's contention, the purpose of imposing sanctions for trafficking in SNAP benefits is not to punish the store owner, but "the prevention of using SNAP benefits for ineligible items." *El Tepeyac Grocery Inc. v. United States*, 11 CIV. 5837 ALC, 2012 WL 1227956, at *4.

Here, the FNS set Merrick Deli's penalty of $54,000 by following the applicable regulatory formula set out in 7 CFR 278.6(j), which led to a calculated penalty of $383,160.00. However, the SNAP regulations promulgated by the USDA set maximum civil money penalties for trafficking SNAP benefits, and during the relevant time period, 7 C.F.R. § 3.91(b)(3)(ii) provided that the "[c]ivil penalty for trafficking in food coupons, codified at 7 U.S.C. 2021(b)(3)(B), has a maximum of $27,000 for each violation, except that the maximum penalty for violations occurring during a single investigation is $54,000." *Id.* Thus, the FNS reduced the $383,160.00 penalty to $54,000 – the maximum allowable penalty for violations occurring during a single investigation. 7 C.F.R. § 3.91(b)(3)(ii). Given that the trafficking civil money penalty amount was reached by following the applicable regulatory formula, it was not arbitrary and capricious.

Additionally, Merrick Deli argues that the $54,000 penalty imposed – the maximum allowed under the regulations – exceeds the statutory maximum penalty of $40,000 set by Congress in the SNAP statute. Although the SNAP statute does, indeed, provide that "the amount of civil penalties imposed for violations occurring during a single investigation may not exceed $40,000," 7 U.S.C. § 2021(b)(3)(B), Congress subsequently passed the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. 2461, which authorizes executive agencies such as the USDA to upwardly adjust maximum civil fines and penalties to account for

inflation. *See Kellogg Brown & Root Servs., Inc. v. United States*, 99 Fed. Cl. 488, 507 (2011) *aff'd*, 728 F.3d 1348 (Fed. Cir. 2013), *opinion corrected on denial of reh'g*, 563 F. App'x 769 (Fed. Cir. 2014) ("Section 5 of the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. 2461 note, authorizes Executive agency adjustments for inflation of civil fines and penalties."); *see also Sackett v. E.P.A.*, 132 S. Ct. 1367, 1370 (2012). As explain above, pursuant to its authority to periodically upwardly adjust civil monetary penalties for inflation, the USDA periodically amends 7 C.F.R. § 3.91(b)(3)(ii), which, at the time, set the "maximum penalty for violations occurring during a single investigation [at] $54,000." 7 C.F.R. § 3.91(b)(3)(ii). Accordingly, the agency did not exceed the authority granted to it by Congress when it imposed the $54,000 penalty on Merrick Deli.

### *C. Supplemental Briefing*

Although Defendants have moved for summary judgment "dismissing plaintiff's complaint in its entirety," (Defs.' Br. at 14), the parties have neglected to adequately address the third count pleaded in Merrick Deli's complaint, asserting violations of Merrick Deli's procedural and due process rights pursuant 42 U.S.C. § 1983. Defendants are directed to submit supplemental briefing as to Count 3 on or before October 6, 2014. Merrick Deli may file its response, if any, on or before October 20, 2014.

### Conclusion

For the forgoing reasons, the Defendants' motion for summary judgment is granted in its entirety. Proceedings will continue as to Count 3.

**SO ORDERED.**

                                              SANDRA L. TOWNES
                                              United States District Judge

Brooklyn, New York
Dated: _____, 2014

inflation. *See Kellogg Brown & Root Servs., Inc. v. United States*, 99 Fed. Cl. 488, 507 (2011) *aff'd*, 728 F.3d 1348 (Fed. Cir. 2013), *opinion corrected on denial of reh'g*, 563 F. App'x 769 (Fed. Cir. 2014) ("Section 5 of the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. 2461 note, authorizes Executive agency adjustments for inflation of civil fines and penalties."); *see also Sackett v. E.P.A.*, 132 S. Ct. 1367, 1370 (2012). As explain above, pursuant to its authority to periodically upwardly adjust civil monetary penalties for inflation, the USDA periodically amends 7 C.F.R. § 3.91(b)(3)(ii), which, at the time, set the "maximum penalty for violations occurring during a single investigation [at] $54,000." 7 C.F.R. § 3.91(b)(3)(ii). Accordingly, the agency did not exceed the authority granted to it by Congress when it imposed the $54,000 penalty on Merrick Deli.

### C. Supplemental Briefing

Although Defendants have moved for summary judgment "dismissing plaintiff's complaint in its entirety," (Defs.' Br. at 14), the parties have neglected to adequately address the third count pleaded in Merrick Deli's complaint, asserting violations of Merrick Deli's procedural and due process rights pursuant 42 U.S.C. § 1983. Defendants are directed to submit supplemental briefing as to Count 3 on or before October 20, 2014. Merrick Deli may file its response, if any, on or before October 27, 2014.

### Conclusion

For the forgoing reasons, the Defendants' motion for summary judgment is granted in its entirety. Proceedings will continue as to Count 3.

**SO ORDERED.**

S/

/SANDRA L. TOWNES
United States District Judge

Brooklyn, New York
Dated: September 30, 2014

10